IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CARMEN THOMPSON, ET AL., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. 95-309-MJG |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, ET AL., | * * | |
| Defendants. | * | |

\*\*\*\*\*\*

**REPORT AND RECOMMENDATION**

In accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, this case was referred to me for a Report and Recommendation on the Motion for Attorneys' Fees and Costs from Local Defendants for PCD Violations Motions (ECF No. 1271) filed by Plaintiffs against the Housing Authority of Baltimore City and the Mayor and City Council of Baltimore ("Local Defendants" or "Local Parties"). (ECF No. 1276.) The motion has been fully briefed (ECF Nos. 1271, 1272, 1273), and a hearing was held on October 13, 2014, during which arguments from both sides were made in furtherance of their respective positions. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that the Court DENY Plaintiffs' motion.

I. **FACTUAL AND PROCEDURAL HISTORY**

The underlying case, which concerns allegations of housing discrimination, has a long history with this Court, dating back to 1995. Consequently, this report highlights and discusses only those portions of the record that are relevant to the motion for attorneys' fees and costs now before the Court.

In 1996, the parties to this action entered into a Partial Consent Decree ("PCD" or "*Thompson* PCD"), which resolved some of Plaintiffs' claims relating to five housing projects, and which was amended several times thereafter. (ECF Nos. 55, 102, 166, 366, 368.) The parties' compliance with that PCD was to be monitored by this Court over a period of years.

In 2003 and 2004, Plaintiffs filed a Motion for Finding of Violations of Partial Consent Decree and for Relief (the "Violation Motion," ECF No. 423) as well as a Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt for Violations of PCD (the "Contempt Motion," ECF No. 630). Those motions alleged that Defendants had fallen into non-compliance with the duties and obligations set forth under the PCD. Defendants opposed those motions, but they remained pending and were never resolved by the Court.

At various times, Plaintiffs submitted requests for attorneys' fees and costs related to their periodic monitoring and enforcement of Defendants' compliance with the PCD, separate and apart from the two motions identified above. Though often subject to negotiation, Plaintiffs and Local Defendants were generally able to reach agreements regarding the payment of these periodic attorneys' fees and costs. However, they were never able to reach an agreement regarding attorneys' fees and costs associated with the Violation and Contempt Motions. As a result, Plaintiffs and both the Federal and Local Defendants specifically preserved their respective arguments regarding those fees and costs in a series of stipulations.[1] (See, e.g., ECF No. 829 addressing general monitoring and enforcement fees owed by the Local Defendants for the period July 1, 2002 through June 30, 2004 in the amount of $236,744.09 but specifically exempting and preserving fees and costs associated with the two referenced motions.)

---

[1] Ultimately, in February of 2015, Plaintiffs did reach an agreement with the Federal Defendants regarding the payment of those attorneys' fees and costs. (ECF No. 1269.)

In 2012, the parties entered into a Settlement Agreement, which resolved all of Plaintiffs' remaining claims as well as those claims and issues arising under and related to the PCD. On November 20, 2012, the Court entered an Order finally approving the Settlement Agreement but retained jurisdiction over this action solely to enforce the terms of the Agreement, including the adjudication of any motion for an award of fees and expenses filed pursuant to Section XI of the Agreement. (Id. ¶¶ 3, 5.) (ECF No. 1249.)

The Settlement Agreement has three sections (Sections X, XI, and XIV) that are pertinent to the motion for attorneys' fees and costs now before the Court. Section X, titled "Closure and Vacatur of the *Thompson* PCD," provides, in part:

> A. The Parties hereby agree that, as of the Effective Date of this Agreement, this Agreement constitutes the sole instrument governing this Action and fully replaces any and all prior instruments governing this Action, including the *Thompson* PCD.
>
> B. Within seven (7) calendar days of the Execution Date of this Agreement, Plaintiffs shall withdraw all pending motions in this Action against HUD and/or Local Parties arising under or related to the *Thompson* PCD.

(ECF No. 876.) Next, Section XI, titled "Attorney's Fees," states, in part:

> C. Nothing in this agreement shall preclude Plaintiffs from seeking reasonable attorney's fees, costs, and expenses from the . . . Local Parties for: (1) monitoring and enforcement of the Thompson PCD through the execution date of this Agreement; and (2) time spent seeking attorney's fees for such monitoring and enforcement.

(Id.) And finally, Section XIV, titled "Releases," provides, in part:

> C. Local Parties' PCD Releases. Upon the Effective Date of this Agreement . . . the [Plaintiffs] . . . hereby RELEASE, WAIVE, ACQUIT, AND FOREVER DISCHARGE the Local Parties . . . from and are hereby FOREVER BARRED and PRECLUDED from prosecuting, any and all claims, causes of action, motions, and requests for any injunctive and/or monetary relief, including but not limited to . . . costs, attorney's fees, [and] expenses . . whether presently known or

3

>unknown . . . with respect to any issues or obligations arising under or relating to the PCD . . .
>
>>1. The PCD Release provided in the above subsection (C) includes but is not limited to the following pending motions against either or both of the Local Parties and/or their predecessors, and the claims asserted in the following motions against either or both of the Local Parties and/or their predecessors:
>>
>>>a. Docket No. 423: Plaintiffs' Motion for Finding of Violations of Partial Consent Decree and for Relief
>>>
>>>b. Docket No. 630: Plaintiffs' Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt for Violations of PCD
>
>. . .
>
>F. Nothing in the foregoing releases shall be construed to release any claim for attorney's fees, costs, or expenses as set forth in Section XI, above . . .

(Id.)

In their present motion, Plaintiffs seek attorneys' fees for their work in connection with the Violation Motion and the Contempt Motion. Notwithstanding the release language in Section XIV.C of the Settlement Agreement, Plaintiffs contend that the fees they seek are available under Section XI.C because both motions constituted "monitoring and enforcement" of the PCD that occurred prior to the execution date of the Agreement. Anticipating a different interpretation by Defendants, Plaintiffs go on to suggest that the Violation Motion and the Contempt Motion were included in the release language of Section XIV.C.1 only so they could be substantively resolved, but that the Agreement preserved Plaintiffs' right to seek attorneys' fees for the work done on those motions, irrespective of the language in the release. Indeed, Plaintiffs believe that this is the "only reasonable interpretation" of the release in Section XIV.C

4

because, in Section XIV.F, the Agreement states that "nothing in the foregoing releases shall be construed to release any claim for attorneys' fees, costs, or expenses as set forth in Section XI..." Defendants, of course, interpret the Settlement Agreement differently. They do not dispute that the Violation and Contempt Motions are considered part of the "monitoring and enforcement costs," as that term is used in the Agreement. Rather, Defendants counter that, considering the specificity of the language of the release provisions (XIV.C.1) and the general language of the attorneys' fees provisions (XI.C and XIV.F), the only reasonable interpretation of the Agreement is that Plaintiffs waived their right to seek attorneys' fees specifically related to the Violation Motion and the Contempt Motion but preserved, in Sections XI.C and XIV.F, their ability to seek attorneys' fees and expenses for other "monitoring and enforcement" activities, unrelated to the two identified motions. Thus, according to Defendants, while Section XIV.C.1 expressly waived the right to collect any attorneys' fees relating to the two motions at issue, Plaintiffs were, under Sections XI.C and XIV.F, entitled to—and have separately sought and been paid for—attorneys' fees associated with other "monitoring and enforcement" activities.

## II.    ANALYSIS

To determine whether Plaintiffs are entitled to the fees they seek for the two motions, the Court must ascertain whether the right to collect such fees was waived as a part of the Settlement Agreement that the parties negotiated and executed. Specifically, the Court must determine whether the language set forth under Section XIV.C.1, when read in conjunction with the other relevant sections of the Settlement Agreement, constituted a waiver of Plaintiffs' right to collect fees associated with the Violation and Contempt Motions.

Both Maryland and federal courts typically consider settlement agreements to be contracts between the parties, subject to the rules of contract interpretation. O'Brien & Gere

5

Engineers, Inc. v. City of Salisbury, 135 A.3d 473, 489 (Md. 2016) ("we apply the rules of construction of contracts in interpreting a settlement agreement"); Rock v. McHugh, 819 F. Supp. 2d 456, 466-67 (D. Md. 2011).  Under Maryland law, [2] courts apply the "objective theory" of contract interpretation, pursuant to which, a court is to "determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated."  Spacesaver Sys., Inc. v. Adam, 98 A.3d 264, 268 (Md. 2014). That is to say, "when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed," and as a result, "the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean. Spacesaver, 98 A.3d at 268-69.

Turning to the language of the Settlement Agreement itself, the issue before the Court, rephrased in light of the aforementioned principles, is whether a reasonable person in the parties' position would have thought that the Agreement permitted Plaintiffs to seek attorneys' fees for their work on the Violation Motion and the Contempt Motion.  Section XI.C preserves the ability to seek attorneys' fees and costs for monitoring and enforcement activities generally.  Thus, when read by itself, Section XI.C would seem to include attorneys' fees and costs associated with the two motions at issue.  As Plaintiffs conceded at oral argument, however, Section XIV.C.1, in more specific language, plainly waives, inter alia, the right to claim attorneys' fees

---

[2] Both parties apparently assume that Maryland law, and not federal common law, governs the interpretation of the Settlement Agreement here, even though there is no choice of law provision in the Agreement.  In determining whether federal common law controls the interpretation of settlement agreements resolving federal claims and to which the federal government is a party, the crux of the inquiry hinges on the implication of federal interests.  See United States v. Schlesinger, 88 F. Supp. 2d 431, 440 (D. Md. 2000) ("Since, undeniably, the parties' rights and obligations under the [contract] involves [sic] pervasive federal interests, federal common law governs the [contract's] interpretation"). The dispute here—whether Plaintiffs are entitled to an award of attorneys' fees from the non-federal government Defendants—does not implicate any federal interests, particularly since it is unrelated to the substance of Plaintiffs' federal claims.  Accordingly, interpretation of the Settlement Agreement is governed by principles of Maryland law.

and costs for work on those motions. Section XIV.F then refers to the general right to attorneys' fees and costs for monitoring and enforcement found in Section XI.C.

It is a "well-established rule of contractual construction that where two provisions of a contract are seemingly in conflict," such provisions "must, if possible, be construed to effectuate the intention of the parties as collected from the whole instrument, the subject matter of the agreement, the circumstances surrounding its execution, and its purpose and design." Heist v. E. Sav. Bank, FSB, 884 A.2d 1224, 1228 (Md. Ct. Spec. App. 2005) (internal citations omitted). And "if a reconciliation can be effected by a reasonable interpretation, such interpretation should be given to the apparently repugnant provisions, rather than nullify any." Id. Stated differently, whenever possible, a court should construe a contract in a way that gives meaning to all of its provisions.

The only interpretation that construes the Settlement Agreement so as to effectuate its plain language without rendering any section superfluous is that, pursuant to the language of Section XIV.F, attorneys' fees are generally preserved as set forth in Section XI.C, except where they are expressly and specifically released by section XIV.C.1. This interpretation is not only consistent with the principles set forth above, but it is further supported by another oft cited canon of contract interpretation, namely: "Where two clauses or parts of a written agreement are apparently in conflict, and one is general in character and the other is specific, the specific stipulation will take precedence over the general, and control it." Heist, 884 A.2d at 1228 (citing Fed. Ins. Co. v. Allstate Ins. Co., 341 A.2d 399 (Md. 1975)). The release in Section XIV.C.1 specifically identifies the Violation and Contempt Motions, and, in clear terms, states that claims for attorneys' fees relating to those motions are waived. Such specificity results in the release language of Section XIV.C.1 taking "precedence" and "control" over the more general reserving-

fees-language found in Sections XI.C and XIV.F, to the extent that there is any conflict or ambiguity between those provisions. Contrary to Plaintiffs' belief, this interpretation does not render the reserving-fees-language in Section XI.C and XIV.F superfluous. The broader language in Section XI.C provides for a right to claim fees for "enforcement and monitoring" activities, other than those specifically related to the two motions that had not yet been recovered prior to the execution of the Settlement Agreement.

Furthermore, the interpretation proposed by Plaintiffs—that the Violation and Contempt Motions were expressly included in the release language of Section XIV.C only so that they could be substantively resolved—presents several problems. First, and most obvious, Plaintiffs' reading of Section XIV.C.1 essentially cherry-picks favorable language from the release section (XIV.C), while not accounting for what is left behind. That is, Plaintiffs suggest that the reference to "The PCD Release" in XIV.C.1 is limited only to the term "motion," yet they entirely ignore the other language in XIV.C that refers to, among other things, "requests for any payments, debt relief, costs, attorneys' fees… " As a result, such an interpretation renders Section XIV.C's language releasing attorneys' fees for the two motions meaningless and, indeed, puzzling.

And second, Plaintiffs' interpretation leaves XIV.C redundant in light of Section X, which already commits the parties to withdrawing "all pending motions in this Action against HUD and/or Local Parties arising under or related to the *Thompson* PCD." Following Plaintiffs' theory, it is unclear why XIV.C.1 would need to specifically identify the two motions at issue, if, in Section X, the parties had already agreed to "withdraw all pending motions;" a provision that surely includes the Violation and Contempt Motions that were pending motions at the time the Settlement Agreement was executed.

8

While the foregoing discussion of the Settlement Agreement disposes of the question before the Court, it is also worth acknowledging that the parties raise the issue of extrinsic evidence, as both have offered evidence of external communications and prior agreements supporting their respective interpretations of the Settlement Agreement. Under the objective theory of contract interpretation, "extrinsic evidence is only utilized when the intent of the parties and the purpose of a [contract] cannot be divined from the actual language of the [contract] in question, necessitating a reasonable interpretation of the language in light of the circumstances surrounding its adoption." Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co., 73 A.3d 224, 234 (Md. 2013). And, under Maryland law, "a written contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning." Spacesaver, 98 A.3d at 273 (quoting Calomiris v. Woods, 727 A.2d 358 (Md. 1999)). "The determination of whether language is susceptible of more than one meaning includes a consideration of 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." Calomiris, 727 A.2d at 436 (quoting Pacific Indem. v. Interstate Fire & Cas., 488 A.2d 486, 488 (Md. 1985)).

As noted above, the language of the contract can be reconciled without resort to extrinsic evidence. Nevertheless, even if I were to find that the release language of the aforementioned sections was ambiguous, such ambiguity would be of no help to Plaintiffs' cause. In such circumstances, the Court could consider external evidence to help uncover the intent of the parties. See Newell v. Johns Hopkins Univ., 79 A.3d 1009, 1019–20 (Md. Ct. Spec. App. 2013) ("We look to extrinsic, or outside, evidence when the subject language presents an ambiguity: Extrinsic evidence is only utilized when the intent of the parties and the purpose of a [contract] cannot be divined from the actual language of the [contract] in question, necessitating a

reasonable interpretation of the language in light of the circumstances surrounding its adoption") (internal citations omitted).

Evidence from the record, along with representations made by both counsel during the hearing, shows that, at the time the Settlement Agreement was executed, there were other significant attorneys' fees and costs, unrelated to the two motions, that the parties envisioned as "monitoring and enforcement" costs and thus recoverable under Sections XI.C and XIV.F. In fact, Defense Counsel has produced a letter[3] from Plaintiffs' Counsel, dated March 8, 2013, in which Plaintiffs' Counsel provides an "itemized" list (or "bill" as it is called in the letter) of the remaining "monitoring and enforcement" fees and costs relating to the *Thompson* PCD amounting to $238,882.76. That "bill" contains no fees or costs associated with the Violation and Contempt Motions.[4] Such correspondence supports the view that Sections XI.C and XIV.F were intended to reserve attorneys' fees for "monitoring and enforcement" of the *Thompson* PCD generally, while Section XIV.C.1 expressly states that costs associated with the Violation and Contempt motions were not recoverable, because it shows that such unrelated "monitoring and enforcement" fees and costs were not merely theoretical but were, in fact, substantial.[5]

---

[3] That letter was attached as "Exhibit B" to Defendant's response to Plaintiffs' motion (ECF No.1272.)

[4] Plaintiffs claim that prior to this correspondence with Defense Counsel, they had already submitted a request for attorneys' fees associated with two motions at issue. As support for this claim, Plaintiffs sight a series of stipulations and other docket entries, from before the execution of the Settlement Agreement, which collectively state that the parties "agreed to defer resolution of what, if any, attorneys' fees, costs, and expenses are due from Defendants for the time, costs, and expenses" associated with the Violation and Contempt Motions. The Court does not find these stipulations to be particularly helpful to Plaintiffs, as they were merely an agreement between the parties to defer the issue of attorneys' fees, and those stipulations predated the Settlement Agreement, which purported to nullify all prior agreements.

[5] I also do not find compelling Plaintiffs' argument that the Federal Defendants ultimately paid their share of such fees. The amount in dispute with the Federal Defendants was significantly smaller at approximately $55,000. (ECF No. 1269.) Thus, it is far from apparent that the 2015 decision by the Federal Defendants to pay their share of these fees is necessarily an endorsement of Plaintiffs' interpretation of the Settlement Agreement rather than simply a cost-benefit decision regarding continuing to contest the petition.

Furthermore, it is equally clear from the record that the parties had an ongoing dispute about the payment of fees and costs associated with the two motions. That dispute remained pending many years after fees for the motions were originally sought, as the parties consistently agreed to "carve out" this fee dispute from Plaintiffs' other fee demands for "monitoring and enforcement" activities. It is entirely consistent, therefore, to interpret the Settlement Agreement as also carving out those fees from recovery in Section XIV.C.1.

### III.   CONCLUSION

In sum, I recommend that the Court DENY Plaintiffs' Motion for Attorneys' Fees and Costs from Local Defendants for PCD Violations Motions (ECF No. 1271).  Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5.b.


October 21, 2016                                     /s/
                                         J. Mark Coulson
                                         United States Magistrate Judge